```
IN THE UNITED STATES DISTRICT COURT FOR THE
            EASTERN DISTRICT OF OKLAHOMA
```

FRANCINE MILDRED TAYLOR,        )
                                )
            Plaintiff,          )
                                )
v.                              )     Case No. CIV-13-504-FHS-KEW
                                )
CAROLYN W. COLVIN, Acting       )
Commissioner of Social          )
Security Administration,        )
                                )
            Defendant.          )

## REPORT AND RECOMMENDATION

Plaintiff Francine Mildred Taylor (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on September 18, 1974 and was 38 years old at the time of the ALJ's decision. Claimant completed her high school education and one or two years of college. Claimant has worked in the past as a nurses aide, corrections officer, personal care aide, and resident care aide. Claimant alleges an inability to work beginning January 26, 2011 due to limitations resulting

3

from a right ankle injury, depression, anxiety, and insomnia.

## Procedural History

On July 11, 2011, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On April 16, 2013, Claimant appeared before Administrative Law Judge James Bentley ("ALJ") for an administrative hearing. On June 10, 2013, the ALJ issued an unfavorable decision. The Appeals Council declined to review the decision on September 13, 2013. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform a range of light work with limitations.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to reach a proper step three evaluation; (2) failing to fully and fairly evaluate the opinions of the state agency medical consultants; and (3) failing to perform a proper RFC assessment.

**Step Three Analysis**

In his decision, the ALJ determined Claimant suffered from the severe impairments of open dislocation of the right ankle and hypertension. (Tr. 11). The ALJ also found Claimant retained the RFC to perform a range of light work except that Claimant required a sit/stand option defined as a temporary change in position from sitting to standing without leaving the work station no more than once every half hour. The ALJ determined Claimant should not climb ropes, ladders, or scaffolds and not operate foot controls with the right lower extremity. (Tr. 14). After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of cashier II, storage facility rental clerk, and routing clerk which the expert testified existed in sufficient numbers in the regional and national economies. (Tr. 20). Claimant was found to have not been under a disability during the relevant period. (Tr. 20-21).

Claimant first contends the ALJ failed to properly evaluate whether she met a listing at step three. Specifically, Claimant asserts that she met Listing 1.03 for reconstructive surgery or surgical fusion of a major weight-bearing joint. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.03. The ALJ considered whether Claimant met Listing 1.02 pertaining to a major dysfunction of a joint due

5

to any cause. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02. He concluded that the medical record did not indicate that Claimant's open dislocation of the right ankle resulted in an inability to ambulate effectively as that term is defined at § 1.00B(2)(b). (Tr. 14).

On January 26, 2011, Dr. Greg Jones performed a surgical irrigation and debridement of Claimant's open ankle and subtalar joint dislocations with removal of bone fragments, subtalar ligament repair and stabilzation, and ankle ligament reconstruction with tendon sheath repair and bone fragment removal as a result of a motor vehicle accident. (Tr. 198). On more than one occasion, Claimant was fitted with crutches. (Tr. 275). Dr. Jones opined Claimant would suffer from lifelong arthritic abnormality. (Tr. 272). A CT scan of her right ankle revealed prominent avulsions, loose bone fragments, and a possible nondisplaced bone fracture. (Tr. 271).

On July 11, 2011, Dr. Jones noted had no improvement and was going to require additional reconstructive surgery for a fusion-arthrodosis and would remain unable to work for a period of four to six months after surgery before any reasonable expectation of a return to ambulatory function without significant pain, supports, and time required to control swelling. (Tr. 207). On August 5,

2011, Claimant underwent the recommended surgery. She could only have touchdown weightbearing ambulation only. She had been on crutches only with minimal ambulation. She was still somewhat swollen. (Tr. 281).

On November 7, 2011, Dr. Jones noted Claimant could not expect a normal outcome due to the nature of her injury. She was found to have a permanently disfiguring and to some extent disabling injury because of the nature of the original phenomenon. (Tr. 352).

In January of 2012, Dr. Jones noted Claimant still had significant stiffness, incisional tenderness, and permanent numbness due to superficial skin damage. (Tr. 356). She still used crutches and continued to advance weightbearing. (Tr. 357).

On May 14, 2012, Dr. Jones found Claimant to still have a significantly altered gait. He stated she could go heel to toe and needed to start walking "normally" straight ahead. He also noted Claimant had gained 40 pounds and was suffering from back pain. (Tr. 361-62).

On July 18, 2012, Dr. Jones found Claimant was able to walk. She still had tenderness and a gait problem. He thought Claimant should use a cane in the office at hand and work on heel-toe to correct her abnormal gait. (Tr. 364). Claimant continued to suffer pain from superficial neuromas and a rather prominent and

7

pointed greater trochanter related to her continuing pain. (Tr. 364-65). After the neuromas were removed in August of 2012, Claimant was noted to be improving but continued to have lower extremity swelling into October of 2012. (Tr. 369).

Listing 1.03 requires a finding that Claimant had "[r]econstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in [listing] 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." 20 C.F.R. § 404, Subpart P, Appendix 1, Listing 1.03. As noted in Listing 1.03, Listing 1.00B2b defines the "inability to ambulate effectively." Id. In relevant part, Listing 1.00B2b provides:

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . .
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk

8

without the use of a walker, two crutches or two canes,
the inability to walk a block at a reasonable pace on
rough or uneven surfaces, the inability to use standard
public transportation, the inability to carry out routine
ambulatory activities, such as shopping and banking, and
the inability to climb a few steps at a reasonable pace
with the use of a single hand rail. . . .

Id. at Listing 1.00B2b(1)-(2).

A substantial question exists as to whether Claimant meet the criteria of Listing 1.03 since Claimant underwent reconstructive surgery and she was unable to ambulate for at least 12 months according to Dr. Jones' treatment records. The ALJ did not address the evidence in this regard, choosing instead to simply conclude the evidence did not indicate Claimant could not ambulate. Moreover, the ALJ did not specifically address Listing 1.03. On remand, the ALJ shall reconsider and re-evaluate the evidence as to whether Claimant meets Listing 1.03.

**Evaluation of State Agency Medical Consultants**

Claimant also contends the ALJ failed to evaluate the state agency consultants, Dr. Charles Clayton and Dr. C. Ryan. On October 27, 2011, Dr. Clayton completed a Physical Residual Functional Capacity Assessment of Claimant. Among his findings was a determination that Claimant could stand and/or walk for at least 2 hours in an 8 hour workday. (Tr. 302). These findings were reviewed by Dr. Ryan on March 14, 2012 but clarified to indicate

Claimant could stand/walk for 2-4 hours in an 8 hour workday due to her MDI of the right ankle posttraumatic arthropathy. (Tr. 326).

The ALJ gave these opinions "great weight" in determining her sit and stand option and limitations. (Tr. 18). However, the ALJ also concluded Claimant was capable of performing light work which requires a finding that a claimant can stand/walk for about 6 out of 8 hours a day. Soc. Sec. R. 83-10. Effectively, the ALJ has rejected the opinions of these consultants while inconsistently stating their opinions were afforded great weight. On remand, the ALJ shall rectify this inconsistency.

### RFC Determination

Claimant asserts the ALJ should have considered her mental limitations in his RFC evaluation. The medical record does support diagnoses of depression and anxiety disorders including suicidal thoughts and memory and concentration deficits. (Tr. 284). On remand, the ALJ shall consider the totality of the record as well as the consultative mental examiners' opinions in assessing whether Claimant's RFC should include mental limitations.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above

and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 26th day of January, 2015.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE